Lincoln Combs (Bar No. 025080)
Kevin Neal (Bar No. 011640)
GALLAGHER & KENNEDY, P.A.
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:    (602) 530-8000
Facsimile:    (602) 530-8500
lincoln.combs@gknet.com
kevin.neal@gknet.com
*Attorneys for Plaintiff/Statutory*
*Beneficiary Olga Diaz, mother of*
*Manuel Diaz, Deceased, and Jessica*
*Trevino, natural mother and legal*
*guardian of Statutory Beneficiaries*
*Mia Olga Diaz and Nelly Joanne*
*Diaz, minor children of Manuel Diaz*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Olga Diaz, a married woman, on behalf of herself and all other statutory beneficiaries of Manuel Diaz, deceased,

Plaintiff,

v.

Corizon Health, Inc., a Tennessee corporation; Corizon, Inc., a Tennessee corporation; Community Healthcare Of Douglas, an Arizona corporation; Charles L. Ryan and Jane Doe Ryan, a married couple; Al Ramos and Jane Doe Ramos, a married couple; Naomi Fimbres and John Doe Fimbres, a married couple; Anna Marie Jensen-Trees and John Doe Jensen-Trees, a married couple; Debra Kinder and John Doe Kinder, a married couple; Stephen Stephens and Jane Doe Stephens, a

Case No. CV-15-1222-PHX-PGR

# FOURTH AMENDED COMPLAINT

Gallagher & Kennedy, P.A.
2575 East Camelback Road
Phoenix, Arizona  85016-9225
(602) 530-8000

1  married couple; Christine Perea and John
2  Doe Perea, a married couple; Carla Transue
   and John Doe Transue, a married couple;
3  Mark Chorebanian and Jane Doe
4  Chorebanian, a married couple; The
   People's Choice Hospital, LLC d/b/a
5  People's Choice Hospital, a Delaware
   corporation; Douglas Community Hospital,
6  Inc., and Arizona corporation d/b/a Cochise
7  Regional Hospital; Jane Does I-X,
   inclusive; John Does I-X, inclusive; Black
8  Corporations I-X, inclusive; White
   Partnerships I-X, inclusive,
9

10                    Defendants.

11

12     Pursuant to the December 10, 2015, Order of the Court (doc. 37), Plaintiff Olga
13
14  Diaz, on behalf of all statutory beneficiaries of Manuel Diaz, deceased, alleges as follows:

15                          **INTRODUCTION**

16     1.     This is an action arising out of the death of Manuel Diaz while in the
17
18  custody of the Arizona Department of Corrections at the Douglas State Prison.

19     2.     Defendants were responsible for the medical care of Plaintiff while he was
20  incarcerated and in custody.

21     3.     Defendants owed Plaintiff tort and constitutional duties of care to provide
22
23  him with reasonable, appropriate, and non-negligent medical care.

24     4.     Defendants breached those duties by providing negligent, inadequate
25  healthcare which caused his death.

26

2

5.     Defendants breached their duties of care and demonstrated deliberate indifference to Plaintiff's civil rights by not only ignoring his serious medical needs but establishing policies, customs, procedures, and practices which affirmatively created dangers and serious risks of substantial harm for Plaintiff.

6.     Defendants' policies and practices caused Plaintiff's death.

7.     Plaintiff sues Defendants for compensatory damages, attorneys' fees, and other applicable damages and remedies under the U.S. Constitution, federal civil rights statutes, and Arizona statutory and common law.

## PARTIES, JURISDICTION AND VENUE

8.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

9.     At all times material to this Complaint, Plaintiff Olga Diaz, mother of decedent Manuel Diaz, was a resident of the State of Arizona, County of Maricopa.

10.     At all times material to this Complaint, Jessica Trevino was a resident of the State of Arizona, County of Maricopa, and was and is the natural mother and legal guardian of M.O. Diaz and N.J. Diaz, the surviving children of Manuel Diaz and Jessica Trevino.

11.     At all times material to this Complaint other than when he was in the custody of the Arizona Department of Corrections (ADC) as described herein, Manuel Diaz, deceased, was a resident of the State of Arizona, County of Maricopa, prior to his death.

3

12.     Plaintiff Olga Diaz brings this claim on behalf of herself and all other statutory beneficiaries of Manuel Diaz, deceased, pursuant to A.R.S. § 12-612, U.S. Const. amend. VIII, and 42 U.S.C. § 1983.

13.     Defendant Corizon Health, Inc. is a Tennessee corporation that is authorized to and during the relevant time did transact business throughout Arizona, including at the Douglas State Prison in Douglas, Cochise County, Arizona.

14.     Defendant Corizon, Inc. is a Tennessee corporation that is authorized to and during the relevant time did transact business throughout Arizona, including at the Douglas State Prison in Douglas, Cochise County, Arizona.

15.     Defendant Corizon Health, Inc. and Corizon, Inc. are hereinafter referred to collectively as "Corizon" or the "Corizon Defendants."

16.     The ADC is an agency of the State of Arizona.

17.     During the events out of which this action arises, Defendant Community Healthcare of Douglas, Inc. ("Community Healthcare") was a partial or former owner and operator of Southeast Arizona Medical Center ("SEAMC") in Douglas, Cochise County, Arizona and has its corporate headquarters in Douglas, Cochise County, Arizona.

18.     During the events out of which this event arises, Defendant The People's Choice Hospitals, LLC d/b/a People's Choice Hospital ("People's Choice") was a pending, partial, or sole owner and operator of SEAMC.  People's Choice is a Delaware limited liability company and, upon information and belief, has its corporate headquarters in Chicago, Illinois.

4

19.    During the events out of which this event arises, Defendant Douglas Community Hospital, Inc. ("DCHI") was a pending, partial, or sole owner and operator of SEAMC.  DCIH is an Arizona corporation and, upon information and belief, has its corporate headquarters in Douglas, Arizona.

20.    Upon information and belief, DCIH is a shell company, subsidiary, or holding company for People's Choice to which People's Choice assigned certain rights and interests regarding SEAMC at the time People's Choice completed its purchase of SEAMC in January 2014.

21.    Upon information and belief, DCIH and/or People's Choice renamed SEAMC "Cochise Regional Hospital," and obtained insurance for their operations at SEAMC/Cochise Regional Hospital with "Cochise Regional Hospital" as the named insured.

22.    People's Choice, DCIH, and Community Healthcare were involved in the ownership, operation, and management of SEAMC during the period at issue in this case and thus all owed Manuel Diaz and other patients to whom they provided a duty of non-negligent medical care.  Their violation of that duty means that they are jointly and severally liable for the death of Manuel Diaz as described herein.

23.    Defendant Mark Chorebanian was, during the events out of which this lawsuit arises, a physician employed by or contracted with SEAMC.

24.    Defendant Jane Doe Chorebanian is, upon information and belief, Dr. Chorebanian's wife.  Upon information and belief, Jane Doe Chorebanian was at all times

5

material hereto a resident of Pima County, Arizona.   Jane Doe Chorebanian is a fictitiously-named defendant whose true identity is presently unknown.   Plaintiff will amend this complaint when Jane Doe Chorebanian's true name becomes known.

25.     Unless otherwise noted, Defendants Mark Chorebanian and Jane Doe Chorebanian will be referred to collectively as the "Chorebanian Defendants."

26.     Defendant Charles L. Ryan was, at all material times hereto, the Director of ADC, and he is sued herein in his official capacity. As the Director of the ADC, Defendant Ryan is responsible for establishing, monitoring, and enforcing overall operations, policies, and practices of the Arizona state prison system, which includes the provision of constitutionally adequate medical care for all prisoners committed to the custody of ADC.  A.R.S. §§ 31-201, 41-1604(A), 41-1608.

27.     As Director, Defendant Ryan is responsible for decisions concerning staff hiring, supervision, deployment, and training that directly affect prisoners' abilities to obtain adequate and necessary health services. He is responsible for providing constitutional conditions of confinement in all units. At all times material hereto, he has acted under color of state law.

28.     Upon information and belief, Defendant Ryan was at all times material hereto a resident of Maricopa County, Arizona.

29.     Defendant Jane Doe Ryan is, upon information and belief, Mr. Ryan's wife. Upon information and belief, Jane Doe Ryan was at all times material hereto a resident of Maricopa County, Arizona.  Jane Doe Ryan is a fictitiously-named defendant whose true

6

identity is presently unknown.  Plaintiff will amend this complaint when Jane Doe Ryan's true name becomes known.

30.     Unless otherwise noted, Defendants Charles L. Ryan and Jane Doe Ryan will be referred to collectively as the "Ryan Defendants."

31.     Defendant Alfred Ramos was, upon information and belief, at all times material hereto the Warden of the Douglas State Prison and he is sued herein in his official capacity. As the Warden, Defendant Ramos is responsible for establishing, monitoring, and enforcing overall operations, policies, and practices of the Douglas State Prison, which includes the provision of constitutionally adequate medical care for all prisoners incarcerated in the Douglas State Prison. A.R.S. §§ 31-201, 41-1604 (A), 41-1608.

32.     As Warden, Defendant Ramos is responsible for decisions concerning staff hiring, supervision, deployment, and training that directly affect prisoners' abilities to obtain adequate and necessary health services. He is responsible for providing constitutional conditions of confinement in all units. At all times material hereto, he has acted under color of state law

33.     Upon information and belief, Defendant Ramos was at all times material hereto a resident of Cochise County, Arizona.

34.     Defendant Jane Doe Ramos is, upon information and belief, Mr. Ramos's wife.  Upon information and belief, Jane Doe Ramos was at all times material hereto a resident of Cochise County, Arizona.  Jane Doe Ramos is a fictitiously-named defendant

7

whose true identity is presently unknown.  Plaintiff will amend this complaint when Jane Doe Ramos's true name becomes known.

35.    Unless otherwise noted, Defendants Alfred Ramos and Jane Doe Ramos will be referred to collectively as the "Ramos Defendants."

36.    Defendant Naomi Fimbres was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

37.    Upon information and belief, Defendant Fimbres was at all times material hereto a resident of Cochise County, Arizona.

38.    Defendant John Doe Fimbres is, upon information and belief, Ms. Fimbres's husband.  Upon information and belief, John Doe Fimbres was at all times material hereto a resident of Cochise County, Arizona.   John Doe Fimbres is a fictitiously-named defendant whose true identity is presently unknown.  Plaintiff will amend this complaint when John Doe Fimbres's true name becomes known.

39.    Unless otherwise noted, Defendants Naomi Fimbres and John Doe Fimbres will be referred to collectively as the "Fimbres Defendants."

40.    Defendant Anna Marie Jensen-Trees was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

41.    Upon information and belief, Defendant Jensen-Trees was at all times material hereto a resident of Cochise County, Arizona.

42.    Defendant John Doe Jensen-Trees is, upon information and belief, Ms. Jensen-Trees husband.  Upon information and belief, John Doe Jensen-Trees was at all

8

times material hereto a resident of Cochise County, Arizona.  John Doe Jensen-Trees is a fictitiously-named defendant whose true identity is presently unknown.  Plaintiffs will amend this complaint when John Doe Jensen-Trees' true name becomes known.

43.     Unless otherwise noted, Defendants Anna Marie Jensen-Trees and John Doe Jensen-Trees will be referred to collectively as the "Jensen-Trees Defendants."

44.     Defendant Debra Kinder was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

45.     Upon information and belief, Defendant Kinder was at all times material hereto a resident of Cochise County, Arizona.

46.     Defendant John Doe Kinder is, upon information and belief, Ms. Kinder's husband.  Upon information and belief, John Doe Kinder was at all times material hereto a resident of Cochise County, Arizona.  John Doe Kinder is a fictitiously-named defendant whose true identity is presently unknown.  Plaintiff will amend this complaint when John Doe Kinder's true name becomes known.

47.     Unless otherwise noted, Defendants Debra Kinder and John Doe Kinder will be referred to collectively as the "Kinder Defendants."

48.     Defendant Stephen Stephens was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

49.     Upon information and belief, Defendant Stephens was at all times material hereto a resident of Cochise County, Arizona.

9

50.     Defendant Jane Doe Stephens is, upon information and belief, Mr. Stephens' wife.  Upon information and belief, Jane Doe Stephens was at all times material hereto a resident of Cochise County, Arizona.  Jane Doe Stephens is a fictitiously-named defendant whose true identity is presently unknown.

51.     Unless otherwise noted, Defendants Stephen Stephens and Jane Doe Stephens will be referred to collectively as the "Stephens Defendants."

52.     Plaintiff will amend this complaint when John Doe Stephens' true name becomes known.

53.     Defendant (Louisa) Christine Perea was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

54.     Upon information and belief, Defendant Perea was at all times material hereto a resident of Cochise County, Arizona.

55.     Defendant John Doe Perea is, upon information and belief, Ms. Perea's husband.  Upon information and belief, John Doe Perea was at all times material hereto a resident of Cochise County, Arizona.  John Doe Perea is a fictitiously-named defendant whose true identity is presently unknown.  Plaintiff will amend this complaint when John Doe Perea's true name becomes known.

56.     Unless otherwise noted, Defendants Louisa Christina Perea and John Doe Perea will be referred to collectively as the "Perea Defendants."

57.     Defendant Carla Transue was, at all material times hereto, a Corizon nurse working in Douglas State Prison.

10

58.     Upon information and belief, Defendant Transue was at all times material hereto a resident of Cochise County, Arizona.

59.     Defendant John Doe Transue is, upon information and belief, Ms. Transue's husband.  Upon information and belief, John Doe Transue was at all times material hereto a resident of Cochise County, Arizona.   John Doe Transue is a fictitiously-named defendant whose true identity is presently unknown.  Plaintiff will amend this complaint when John Doe Transue's true name becomes known.

60.     Unless otherwise noted, Defendants Carla Transue and John Doe Transue will be referred to collectively as the "Transue Defendants."

61.     The individual ADC and Corizon Defendants were, at all material times hereto, acting in the course and scope of their employment with ADC and/or Corizon and acting under color of state law.

62.     Defendants Jane Does I-X, John Does I-X, Black Corporations I-X, and White Partnerships I-X, inclusive, are individuals, corporations, partnerships or business entities which caused the events complained of to occur in the State of Arizona.  Plaintiff does not know the true identities of Defendants.   However, Plaintiff will amend this Complaint when the true names of the Defendants become known.

63.     Defendants John Does I-X, Jane Does I-X, Black Corporations I-X, and ABC Partnerships I-X can include, but are not limited to, doctors, physicians, surgeons, nurse practitioners, physicians assistants, or any other health care providers, who were employees, agents or contractors of Defendants who administered care and treatment or

11

rendered diagnoses to Manuel Diaz and who negligently and/or with deliberate indifference breached the standard of care in said care, treatment, or diagnoses of Manuel Diaz.

64.     Upon information and belief, all physicians, nurses, and other healthcare providers who provided care and treatment to Manuel Diaz while in ADC custody including but not limited to the period from January 11, 2014, until his death on January 24, 2014, were employees, agents, or ostensible agents of the Corizon Defendants for whose negligent or otherwise tortious conduct the Corizon Defendants are vicariously liable under the doctrines of *respondeat superior*, principal/agency, and non-delegable duty.

65.     Upon information and belief, Defendants People's Choice, DCIH, and Community Healthcare are vicariously liable for the negligence of any employees, doctors, or healthcare providers who provided care and treatment to Manuel Diaz at any time while he was serving his prison sentence or in ADC custody, including but not limited to the period from January 11, 2014, until his death on January 24, 2014, including Defendant Dr. Mark Chorebanian.

66.     At all times mentioned herein, Defendants, and each of them, were agents, servants and employees of the remaining Defendants, and each was at all times acting in the course and scope of said agency, service, and employment.  All Defendants were either joint tortfeasors with the other Defendants and were concurrently or jointly and

12

5202563v1/24873-0001

severally liable for the acts and omissions described herein or secondarily liable for said acts and omissions.

67.     All Defendants had civil and constitutional duties to render and exercise timely, proper, and reasonable medical care, assistance, and treatment to Manuel Diaz, and to establish policies and practices to ensure that these obligations were met.

68.     Defendants caused the events complained of to occur in the State of Arizona.

69.     Jurisdiction and venue are appropriate in this Court.   The amount in controversy exceeds the minimum jurisdictional limits of this court.

70.     On or about July 17, 2014, Plaintiff served a notice of claim on the State of Arizona in compliance with A.R.S. § 12-821.01.   Additionally, although Defendant Corizon is not entitled to the protections of A.R.S § 12-821.01, Plaintiff also served a claim notice on Defendant Corizon.

71.     Service of Plaintiff's notice of claim on Defendants State of Arizona and Corizon was proper and complied with all statutory and common law requirements for presentation of notices of claim under A.R.S. § 12-821.01 and all other applicable law.

72.     No substantive response or reply of any nature has been made by the State of Arizona or Defendant Corizon.   Thus, pursuant to A.R.S. § 12-821.01, Plaintiff's claim has been denied and this lawsuit is properly commenced.

73.     Defendants diagnosed, treated, and cared for Manuel Diaz in an unskilled, careless, and negligent manner and failed to use proper skill or care in the treatment of

Manuel Diaz, among other things incluing failing to treat a flu virus and resulting complications that caused Manuel Diaz's death.

## FACTUAL BACKGROUND

### Defendants' History of Chronic Failures to Provide Adequate Health Care to Prisoners in ADC Custody

74.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

75.    Defendants Corizon, Ryan, and Ramos, through written policies approved by Defendant Ryan, have a legal duty to provide prisoners with sufficient resources to provide the "community standard of health care."   ADC Dept. Order 1101.01, 1.1, attached at Exhibit "A" hereto. At the Douglas State Prison, however, Defendants' written policies are more honored in the breach than in the observance, leaving prisoners at the mercy of de facto policies that put their lives and health at risk.

76.    Defendants Corizon, Ryan, and Ramos were and are well aware of severe system-wide deficiencies that have caused and continue to cause significant harm to the prisoners in ADC custody, yet prior to Manuel Diaz's death failed to take any measures to abate the impermissible and unconstitutional risk of harm their decisions create for Arizona prisoners. In recent years, Defendants ignored repeated warnings of the inadequacies of the health care system and of the dangerous conditions in their isolation units that they received from inmate grievances, reports from outside groups, complaints

14

from prison personnel, and finally a class action lawsuit that forced ADC and Defendant Ryan to make changes:

- Upon information and belief, in December 2009, a prison physician complained in writing to Defendant Ryan that ADC officials were breaking the law by not providing adequate health care. James Baird, M.D., the Director of Medical Services for ADC, responded on behalf of Defendant Ryan and stated, "[t]he Department has not been found, as yet, to be deliberately indifferent. … **Is the Department being deliberately indifferent? Maybe. Probably.** That would be up to a Federal Judge to decide. I do think that there would be numerous experts in the field that would opine that deliberate indifference has occurred." *See* Third Amended Class Action Complaint for Injunctive and Declaratory Relief, *Parsons v. Ryan*, No. CV-10-2070-PHX-JWS (D. Ariz.), Exhibit "B" hereto and incorporated by reference, ¶ 23 (emphasis added).  Dr. Baird's knowledge is imputed to Defendants.

- On October 12, 2011, the ACLU submitted a 21-page demand letter to Defendant Ryan, describing numerous systemic problems in the health care system and isolation units operated by Defendants, and detailing multiple examples of harm and injuries to prisoners resulting from these inadequate policies and practices. Defendant Ryan initially responded by requesting

5202563v1/24873-0001

three months to investigate these problems, but never provided any substantive response to the charges labeled by the ACLU. Exh. B. ¶ 25.

• In March 2012, the ACLU and a team of pro bono lawyers filed a 75-page class action complaint seeking injunctive and declaratory relief against Defendant Ryan and others to force Defendant Ryan and the prison supervisors and healthcare workers under his command to begin providing adequate medical care to prisoners. *See generally* Exh. B.

• The ACLU complaint alleged multiple serious instances of serious medical neglect in the Douglas State Prison, among others, in the 2009-11 period. Specifically noted in the complaint was that Defendants have a policy and practice of failing to mitigate the risk of infectious and communicable diseases.

• Class was certified for the ACLU lawsuit and the certification was upheld on appeal to the Ninth Circuit. *Parsons v. Ryan*, 754 F.3d 657 (9th Cir. 2014). Through the course of the lawsuit over the next two and a half years, the plaintiffs disclosed hundreds of pages of expert reports addressing systemic problems with ADC medical care under Defendant Ryan's supervision, including serious systemic problems with medical care in the Douglas State Prison.

• On the eve of trial in October 2014, Defendant Ryan and ADC implicitly acknowledged the merits of the class action and the major problems with

16

prison healthcare in Arizona when they agreed to a settlement of the ACLU lawsuit. Although Defendant Ryan and ADC continued to deny any wrongdoing, the settlement required ADC to undergo a host of structural changes to its prison healthcare system.

77. Corizon was named the new contractor to provide prison healthcare for ADC in March 2013, and thus was not responsible for the conduct described in the ACLU class action complaint filed the previous year. But it and its employees, owners, officials, and agents were not only aware of the historical problems with prison healthcare in Arizona at the time it assumed the contract and going forward, they did nothing to fix those problems. The previously-documented inadequacies in health care continued just as under previous management. And Corizon's deficiencies after it assumed responsibility for ADC healthcare were well-chronicled by the plaintiffs' experts in the ACLU class action.

78. Defendants Ryan, Ramos, and Corizon were thus on notice in 2013 and 2014 up through the time that Plaintiff Manuel Diaz died due to the inadequate medical care provided to him in the Douglas State Prison, that there were chronic, serious, and deadly systemic problems with their provision of health care to prisoners incarcerated at the Douglas State Prison and other ADC facilities.

79. But Defendants Ryan, Ramos, and Corizon did nothing to correct those problems. Defendants made no significant changes or improvements to their prison healthcare policies or procedures, and continued to provide unreasonable, inadequate,

17

1  negligent, and unconstitutionally poor health care to prisoners in ADC custody, in reckless

2  and deliberate indifference to both the risk that this conduct posed to those prisoners and

3
4  Defendants' constitutional, statutory, and common law tort duties to provide reasonable

5  and adequate care.

6      80.    Defendant Ryan's, Ramos's, and Corizon's policy decisions to provide

7  inadequate staffing, resources, and care to prisoners in need of medical attention caused

8
9  Manuel Diaz to suffer and die when an infection was allowed to fester untreated until it

10  had caused irreversible and ultimately fatal damage.

11  **Manuel Diaz's Relevant Medical History and Defendants' Failures to Provide Him**
12  **Appropriate Preventative Care in Light of that History**

13      81.    Plaintiff incorporates by reference all preceding allegations as though fully

14  set forth herein.

15      82.    Manuel was Hepatitis-C positive at the time he was incarcerated in Douglas
16
17  State Prison, and thus suffered a suppressed and damaged immune system which made

18  him more susceptible to the flu virus.

19      83.    Despite Manuel's weakened immune system, which made him both more

20  susceptible to the flu and more likely to have severe complications if he contracted it,
21
22  Defendants Corizon, Ryan, and Ramos, and possibly other individual ADC and Corizon

23  defendants yet unknown, wrongfully denied Manuel Diaz a flu vaccine prior to the

24  commencement of the 2013-14 flu season.

25

26

18

84.    Manuel Diaz was taken into the custody of ADC pursuant to court order sentencing him to five years in prison in October 2013.

85.    Defendants knew or should have known that 2013-2014 was expected to be a particularly virulent flu season and that because of the nature of incarceration and the prison population inmates are particularly susceptible to the flu.

86.    Manuel also had specific pre-existing health complications which compromised his immune system and made him particularly likely to both become infected with the flu virus and to suffer more severely and have more serious complications if he did become infected.

87.    Despite this information, Manuel was not given a flu vaccine at any point while in ADC custody, or even the opportunity to be vaccinated.

**Manuel Diaz's Medical Needs Are Deliberately and Negligently Ignored by Defendants, Causing His Death From Flu Complications**

88.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

89.    In January 2014, Manuel became very ill.

90.    On or about January 11, 2014, through January 16, 2014, when he was discharged first to SEAMC and then medically evacuated by helicopter to St. Luke's Medical Center in Phoenix, Manuel received medical care and attention from ADC and Corizon agents and employees for flu-like symptoms.

19

5202563v1/24873-0001

1    91.    Manuel, who was only 31 years old, first presented to Defendants Fimbres

2    and Transue in the ADC infirmary at the Douglas State Prison on January 11, 2014, with

3    tingling in hands and feet, general body aches, shortness of breath, fever of over 103

4    degrees, nausea and vomiting, and body chills.  He'd been feeling bad since at least

5    January 10, 2014.

6

7    92.    Defendant Corizon healthcare providers Defendants Fimbres and Transue

8    noted in this initial visit that Manuel had not had a flu shot that flu season, but did nothing

9    to address the flu other than telling Manuel to take ibuprofen and drink lots of water.

10

11    93.    Over the next three days Manuel's condition worsened, but Defendant

12    Corizon healthcare providers, including Defendants Fimbres, Jensen-Trees,  and Transue,

13    did nothing to address the virus ravaging his body.

14

15    94.    Instead, on January 12, 2014, when Manuel again reported to the infirmary,

16    Defendant Fimbres only gave Manuel additional ibuprofen and told him to rest and drink

17    water.

18

19    95.    On January 13, 2014, when Manuel once again returned the infirmary,

20    Defendants Transue and Trees-Jensen recommended only rest, water, and ibuprofen.

21    96.    On January 14, 2014, Manuel returned for a fourth straight day to the

22    infirmary reporting of increasingly bad headaches, aches, sore throat, vomiting, and fever.

23    Defendant Trees-Jensen and Transue prescribed only an inhaler to help with breathing and

24    did no flu testing or treatment.

25

26

5202563v1/24873-0001

97.    Unsurprisingly, Manuel's condition worsened and on January 15, 2014, the fifth day of his illness, he was barely able to breathe and extremely sick.

98.    Manuel's fever had spiked along with his other vitals and he was coughing blood.  Defendant Corizon healthcare providers Defendants Perea and Kinder determined that urgent intervention was needed at this time and referred Manuel for transfer out of the prison to nearby SEAMC in Douglas, but took no other steps to ensure Manuel was properly cared for including testing for influenza or recommending antiviral medication.

99.    In the ER at SEAMC Manuel was seen by Defendant Mark Chorebanian, M.D. X-rays showed that Manuel's left lung had pneumonia.

100.   But Defendant Chorebanian did not prescribe Tamiflu or any other influenza treatment for Manuel at SEAMC, and instead sent him back to the prison with only prescriptions for Albuterol, Robitussin, and Zithromax later that morning

101.   By 6:30 p.m. on January 15th, Manuel's condition was rapidly deteriorating. A corrections officer reported that Manuel had "Bloody stool."  The aching, headache, and shortness of breath remained, and Manuel's oxygen saturation levels were extremely low, in the 80's.

102.   Although Defendant Corizon healthcare providers Defendants Transue and Stephens checked the "Urgent Intervention" box, they gave him no additional treatment and Manuel was told to return to the infirmary in the morning.

103.   By January 16, 2014, Manuel had been extremely sick for almost a week with flu symptoms but had received no treatment for the flu.  When he came back to the

21

infirmary at 7:35 a.m. he was in a wheelchair because he could barely walk and was having major trouble breathing.  His vitals were again very high, and his oxygen levels were dangerously low.

104.    Defendant Corizon healthcare providers Defendants Trees-Jensen and Kinder ordered Manuel be given oxygen and a saline IV to stabilize his condition so he could be transferred back to SEAMC immediately.  An ambulance delivered Manuel to SEAMC at 8:40 p.m.

105.    This time, when Manuel was seen in the ER at SEAMC he was given Tamiflu STAT.

106.    His condition was determined to be so severe and emergent that he was immediately evacuated to St. Luke's Medical Center in Phoenix that day.

107.    In his admission at St. Luke's Manuel tested positive for the flu and was noted to have suffered severe lung and kidney damage.

108.    Over the next eight days at St. Luke's, Manuel's clinical course was extremely difficult from complications from the H1N1 flu, specifically respiratory distress syndrome, kidney failure, and respiratory failure.

109.    Manuel passed away from these conditions on January 24, 2014.

110.    The Maricopa County Medical Examiner determined that Manuel died from "complications of influenza."

111.    A subsequent autopsy confirmed that Manuel had died from complications from flu virus Influenza A H1N1.

5202563v1/24873-0001

**CAUSE OF ACTION ONE**
**Ryan Defendants and Ramos Defendants**
(Violation of 42 U.S.C. § 1983)

112.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

113.    Defendant Ryan and Defendant Ramos have a policy and practice of failing to provide prisoners with adequate medical care, and are deliberately indifferent to the fact that their systemic failure to do so results in significant injury and a substantial risk of serious harm to prisoners.

114.    Defendant Ryan's and Defendant Ramos's failures to provide adequate medical care in the prison system and prison that they control and supervise results in prisoners experiencing prolonged unnecessary pain and suffering, preventable injury, amputation, disfigurement, and death. *See generally* Exh. B.

115.    Defendant Ryan's and Defendant Ramos's failures to provide adequate medical care in the prison system and prison that they control and supervise directly and proximately caused Manuel Diaz's death

116.    Defendants Ryan and Ramos have a policy and practice of failing to provide prisoners with medically necessary care to address ongoing medical needs or diseases. Defendants' deliberate indifference to their systemic failure to properly treat or manage prisoners' illnesses and medical needs exacerbates prisoners' conditions, and frequently leads to preventable permanent injuries or deaths.  In Manuel's case, this specifically

caused him harm when the Corizon and Douglas State Prison staff and healthcare providers following Defendant Ryan's and Defendant Ramos's polices:

- failed to do a chronic illness assessment of Manuel Diaz to evaluate his Hepatitis C and other chronic health issues and medical complications to set up an ongoing healthcare plan for him to prevent future illnesses and infections;

- failed to provide him with or an opportunity to obtain himself a flu vaccine; and

- failed to care for and treat the complications and conditions that arose while under their care, including but not limited to the illness and infections which claimed his life.

117.    Defendants Ryan and Ramos have a policy and practice of understaffing their prisons with insufficient medical staff and healthcare providers such that it is impossible for prisoners to receive timely medical care to address either ongoing medical needs or diseases or emergent medical conditions.

118.    Defendant Ryan's and Defendant Ramos's policy and practice of understaffing their prisons with insufficient medical staff and healthcare providers causes inappropriate, unreasonable, unsafe, and unconstitutional delays in diagnosing and treating prisoners in Douglas State Prison and elsewhere.  The delays in turn cause prisoners to suffer enormous risks of serious injury and even death.

5202563v1/24873-0001

119.    The delays in the provision of healthcare caused by Defendant Ryan's and Ramos's policy and practice of understaffing their prisons specifically caused Manuel harm by:

• preventing appropriate diagnosis, treatment, and follow-up care because of the unavailability of prison healthcare staff;

• delaying appropriate diagnosis and treatment for Manuel's worsening illness by a physician; and

• failing to timely intervene to address Manuel's ongoing illness until his condition was emergent, life-threatening, and irreversibly fatal.

120.    By their policies and practices described herein, Defendant Ryan and Defendant Ramos subject prisoners like Manuel to a substantial risk of serious harm and injury from inadequate medical care. These policies and practices have been and continue to be implemented by Defendants Ryan and Ramos and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Manuel's deprivation of rights secured by the United States Constitution under the Eighth Amendment as well as resulting death by the deprivation of his rights.

121.    Defendant Ryan and Defendant Ramos were aware of all of the deprivations of rights complained of herein and the risks of serious harm and injury to prisoners like Manuel that these deprivations cause and condoned or were deliberately indifferent to such conduct and the creation of such risks.

25

122.   Manuel's illness, death, and resulting harm were a foreseeable consequence of the deliberate indifference of Defendants Ryan and Ramos and their violations of Manuel's constitutional rights, and caused Plaintiff harm as described herein.

123.   Defendant Ryan's and Defendant Ramos's deliberate indifference disregarded clearly established law articulating Manuel's right to timely, competent medical care while in custody.

124.   No reasonable prison official in Defendant Ryan's and Defendant Ramos's positions could have believed or concluded in 2014 that Manuel was not entitled to timely, competent medical care under the Eighth Amendment.

125.   Defendant Ryan and Defendant Ramos are not entitled to absolute or qualified immunity from Plaintiff's § 1983 and constitutional claims.

### CAUSE OF ACTION TWO
**Corizon Defendants**
(Violation of 42 U.S.C. § 1983)

126.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

127.   In January 2014, during his time in custody at Douglas State Prison, Manuel Diaz became very ill.

128.   All of Manuel Diaz's medical care and attention from January 11, 2014, until he was transported by ambulance to SEAMC on January 15, 2014, was provided by the Corizon Defendants.

26

5202563v1/24873-0001

129.   The Corizon Defendants were also responsible for Manuel's care after he was returned to the prison on January 15, 2014, up until the time he was sent back out to SEAMC on January 16, 2014.

130.   In providing healthcare to prisoners incarcerated at Douglas State Prison pursuant to their contract with the State of Arizona, the Corizon Defendants performed a traditional public function such that they are liable to prisoners like Manuel for violations of his constitutional and civil rights.

131.   As a prisoner under their custody and care, the Corizon Defendants owed Manuel Diaz a duty of competent medical care under 42 U.S.C. § 1983; A.R.S. §§ 31-201, 41-1604 (A), and 41-1608; and the Eighth Amendment to the U.S. Constitution.

132.   The Corizon Defendants promulgated and endorsed written and unwritten policies, customs, and procedures that resulted in a violation of Manuel's constitutional rights.

133.   The Corizon Defendants have a policy and practice of providing prisoners with inadequate medical care in order to minimize their expenses and maximize their profits, and are deliberately indifferent to the fact that their systemic failure to provide adequate medical care to prisoners results in significant injury and a substantial risk of serious harm to them.

134.   The Corizon Defendants' policy and practice of failing to provide adequate medical care in the Arizona's prisons results in prisoners experiencing prolonged unnecessary pain and suffering, preventable injury, illnesses, and death.

27

135.   The Corizon Defendants' policy and practice of failing to provide adequate medical care directly and proximately caused Manuel Diaz's death and consequent harm and damages to his statutory beneficiaries.

136.   The Corizon Defendants have a policy and practice of failing to provide prisoners with medically necessary care to address ongoing medical needs or diseases. The Corizon Defendants' deliberate indifference to their systemic failure to properly treat or manage prisoners' chronic illnesses exacerbates prisoners' conditions, and frequently leads to preventable permanent injuries, illnesses, and deaths.   In Manuel's case, this caused him specific harm when the Corizon medical staff at Douglas State Prison followed the Corizon Defendants' polices and:

- failed to do a chronic illness assessment of Manuel Diaz to evaluate his Hepatitis C and other health issues and medical complications to set up an ongoing healthcare plan for him to prevent future illnesses and infections;

- failed to provide him with or an opportunity to obtain himself a flu vaccine; and

- failed to care for and treat the complications and conditions that arose because of Plaintiff's pre-existing immune disease, including but not limited to the illness and infections which claimed his life.

137.   The Corizon Defendants have a policy and practice of understaffing their prison healthcare facilities with insufficient medical staff and healthcare providers in order to minimize expenses and maximize profits.

28

138.   This chronic and habitual understaffing as part of Corizon policy is such that it is impossible for prisoners to receive timely medical care to address either ongoing medical needs or diseases or emergent medical conditions, and Corizon was well aware that prisoners were not receiving adequate or timely medical care.

139.   The Corizon Defendants' policy and practice of understaffing their prison healthcare facilities with insufficient medical staff and healthcare providers causes inappropriate, unreasonable, unsafe, and unconstitutional delays in diagnosing and treating prisoners in Douglas State Prison and elsewhere.  The delays in turn cause prisoners to suffer enormous risks of serious injury and illness and even death.

140.   The delays in the provision of healthcare caused by the Corizon Defendants' policy and practice of understaffing in Arizona prisons including Douglas State Prison specifically caused Manuel harm by:

- preventing appropriate diagnosis, treatment, and follow-up care because of the unavailability of prison healthcare staff;

- delaying appropriate diagnosis and treatment for Manuel's worsening illness by a physician; and

- failing to timely intervene to address Manuel's ongoing illness until his condition was emergent, life-threatening, and irreversibly fatal.

141.   By their policies and practices described herein, the Corizon Defendants subject prisoners like Manuel to a substantial risk of serious harm and injury from inadequate medical care.

29

142.    These policies and practices have been and continue to be implemented by the Corizon Defendants and their agents, officials, employees, and all persons acting in concert with them under color of state law, in their official capacities, and are the proximate cause of Manuel's deprivation of rights secured by the United States Constitution under the Eighth Amendment and his subsequent death caused by the deprivation of his rights.

143.    In violating Manuel Diaz's constitutional right to competent, timely medical care while in custody as described above, the Corizon Defendants were deliberately indifferent to Manuel Diaz's serious medical conditions and need for treatment.

144.    The Corizon Defendants' deliberate indifference disregarded clearly established law articulating Manuel Diaz's right to timely, competent medical care while in custody.

145.    No reasonable prison healthcare provider in the Corizon Defendants' positions could have believed or concluded in 2014 that Manuel Diaz was not entitled to timely, competent medical care under the Eighth Amendment.

146.    The Corizon Defendants' deliberate indifference to Manuel Diaz's rights and illness directly and proximately caused his massive and permanent injuries and complications.

147.    Timely, competent medical care while in custody at Douglas State Prison and under the care of the Corizon Defendants would have prevented Manuel Diaz's serious injuries and complications causing his death.

5202563v1/24873-0001

148.    Manuel Diaz's injuries were a foreseeable consequence of the deliberate indifference by the Corizon Defendants and their violations of Manuel Diaz's constitutional rights, and caused Manuel Diaz's death and his statutory beneficiaries' harm as described herein.

149.    The Corizon Defendants are not entitled to absolute or qualified immunity from Plaintiff's § 1983 and constitutional claims.

### CAUSE OF ACTION THREE
**Fimbres, Kinder, Jensen-Trees, Transue, Perea, and Stephens Defendants**
(Violation of 42 U.S.C. § 1983)

150.    Plaintiff incorporates by reference all previous allegations in this complaint.

151.    Despite overwhelming evidence of an active flu virus infection while in ADC custody and under the treatment of Defendant Corizon medical care providers that had begun on or before January 10, 2014, upon information and belief Manuel did not receive any treatment for the flu until on or after January 16, 2014.

152.    As a prisoner under their custody and care, Defendants Fimbres, Kinder, Jensen-Trees, Perea, Transue, and Stephens (the "Individual Corizon Defendants") all owed Manuel a duty of competent medical care under 42 U.S.C. § 1983 and the Eighth Amendment to the U.S. Constitution.

153.    The Individual Corizon Defendants violated Manuel's constitutional right to timely, competent medical care by, among other things:

- failing to provide Manuel a flu vaccine shot prior to the start of the 2013-14 flu season;

31

- denying and/or delaying appropriate diagnoses and treatment of Manuel's rapidly deteriorating condition in January 2014 while under their care; and

- failing to timely involve higher levels of care who could competently diagnose and treat Manuel when he became ill and grew more and more sick.

154.   In violating Manuel's constitutional right to competent, timely medical care while in custody as described above, the Individual Corizon Defendants were deliberately indifferent to Manuel's serious illness.

155.   The Individual Corizon Defendants' deliberate indifference disregarded clearly established law articulating Manuel's right to timely, competent medical care while in custody.

156.   No reasonable prison healthcare provider in the Individual Corizon Defendants' positions could have believed or concluded in 2014 that Manuel was not entitled to timely, competent medical care under the Eighth Amendment.

157.   The Individual Corizon Defendants' deliberate indifference to Manuel's rights and illness directly and proximately caused his death from complications from the flu.

158.   Timely, competent medical care while in custody at Douglas State Prison and under the care of the Individual Corizon Defendants would have prevented Manuel's death.

159.   Manuel's death was a foreseeable consequence of the deliberate indifference of the Individual Corizon Defendants and their violations of Manuel's constitutional

32

rights, and caused Plaintiff's and Manuel's other statutory beneficaries' harm as described herein.

160.    The Individual Corizon Defendants are not entitled to absolute or qualified immunity from Plaintiff's § 1983 and constitutional claims.

**CAUSE OF ACTION FOUR**
**Corizon, Chorebanian, Fimbres, Kinder, Jensen-Trees, Transue, Perea, and Stephens Defendants and Defendants People's Choice, DCIH, and Community Healthcare**
(Negligence; Medical Malpractice)

161.    Plaintiff incorporates by reference all previous allegations in this complaint.

162.    Defendants owed Manuel Diaz duties of care to provide timely, reasonable, appropriate, and non-negligent medical care at all times material hereto.

163.    Despite overwhelming evidence of an active flu virus infection while in ADC custody and under the treatment of Defendant Corizon medical care providers that had begun on or before January 10, 2014, upon information and belief Manuel did not receive any treatment for the flu until on or after January 16, 2014.

164.    Despite overwhelming evidence of an active flu virus infection that had begun on January 10, 2014, upon information and belief Manuel did not receive any treatment for the flu when he presented to Defendant Chorebanian in the ER at SEAMC on January 15, 2014.

165.    Timely treatment of his flu virus by Defendants would have prevented Manuel's death from flu virus complications.

166.   By the time Manuel was medically evacuated to St. Luke's Medical Center on January 16, 2014, it was too late for medical interventions and flu treatment to save his life.

167.   The failure to timely diagnose and treat Manuel's illness was a violation of the standard of care, negligent, and grossly negligent.

168.   As a result of the negligence and gross negligence of Defendants, Manuel Diaz died leaving two young children who depended upon him for support, care, comfort, and love.

169.   As a result of the negligence and gross negligence of Defendants, Manuel Diaz died leaving a mother who enjoyed the care, comfort, and love of the relationship with her son.

170.   Defendants were negligent, grossly negligent, and careless in the performance of duties of protection and care and failed to conform to the standards of practice customarily recognized by medical physicians and hospitals in the State of Arizona and other communities situated throughout the United States.

171.   Defendants were negligent, grossly negligent, and engaged in conduct which fell below applicable standards of care.

172.   As a direct and proximate result of Defendants' negligent, grossly negligent, reckless, and careless acts and omissions, Manuel Diaz suffered from injuries and complications resulting in his death on January 24, 2014.

34

173.   As a further direct and proximate result of Defendants' negligent, gross negligent, careless and reckless acts and omissions, Plaintiff Olga Diaz and Manuel Diaz's other statutory beneficiaries have experienced, and will continue to experience, pain, grief, sorrow, anguish, stress, shock, and mental suffering as a result of Manuel Diaz's wrongful death.

174.   As a further direct and proximate result of Defendants' negligent, gross negligent, careless and reckless acts and omissions, Plaintiff Olga Diaz and Manuel Diaz's other statutory beneficiaries have been, and will continue to be, deprived of Manuel Diaz's love, affection, companionship, care, protection, consortium, guidance, society, companionship, counsel, advice and solace as a result of the wrongful death of Manuel Diaz.

175.   As a further direct and proximate result of Defendants' negligent, gross negligent, careless, and reckless acts and omissions, Plaintiff Olga Diaz and Manuel Diaz's other statutory beneficiaries have experienced and will continue to experience services that have already been lost as a result of the death, and that are reasonably probable to be lost in the future from the wrongful death of Manuel Diaz.

176.   The above-described breaches, negligence, and gross negligence proximately give rise to and constitute a claim for damages for wrongful death pursuant to A.R.S. §§ 12-611, *et seq*.

WHEREFORE, Plaintiff and the other individual statutory beneficiaries pray for judgment against Defendants, and each of them, as follows:

35

1.     For a sum that is reasonable and just for the wrongful death of Manuel Diaz;

2.     For general compensatory damages in a just and reasonable amount;

3.     For the reasonable value of special damages to compensate Manuel Diaz's statutory beneficiaries for the harm resulting from his death;

4.     For attorney fees as allowed by applicable law, including but not limited to 42 U.S.C. § 1988 and 42 U.S.C. § 1997;

5.     For Plaintiff's costs incurred herein as permitted by law; and

6.     For such other and further relief as the Court and jury deem just and proper in the premises.

RESPECTFULLY SUBMITTED this 21st day of January, 2016.

GALLAGHER & KENNEDY, P.A.

By   /s/ Lincoln Combs
     Lincoln Combs
     Kevin D. Neal
     2575 East Camelback Road
     Phoenix, Arizona 85016-9225
     Attorneys for Plaintiff Olga Diaz

5202563v1/24873-0001